Case number 14-7129. Reuven Gilmore, individually and as the Administrator of the Estate of Esh Kadesh Gilmore, and as Metroport Guardian of Planties Elena Gilmore and Gerard Gilmore et al. appellants, v. Palestinian Interim Self-Government Authority, also known as Palestinian Authority et al. Mr. Yellowits for the appellants and Mr. Berger for the appellees. Mr. Berger, are you okay? I'm fine, thank you. Okay. Good morning. Good morning, Your Honor. May it please the Court. Kent Yellowits from Arnold and Porter on behalf of the plaintiffs, the Gilmore family. There are four things I'd like to cover this morning, time permitting. First of all, I want to comment on the way the conversation about whether the Palestinian Authority and the PLO have due process rights under price fits with the holdings of the District Court in the Gilmore case. I think they're very informative. Second, I want to talk a little bit about the specific jurisdiction question. Third, I want to talk about the defendant's waiver of their jurisdiction argument in this case. Don't you think you better start with that before you get to the jurisdiction question? Well, look, the waiver is very obvious because the Federal Rule 12 is very clear that on your first motion, if you have a jurisdictional defense, you have to raise it on the motion. The defendants raise that for the individual defendants. They elected not to raise that for the institutional defendants. And Judge Kessler correctly said they've been making their jurisdictional argument for 10 years. For whatever reason, they chose not to make it in their first motion in this case. That's a waiver. And then they conducted the litigation for 10 years without raising their jurisdictional defense. And it's a very simple holding. It's obviously correct. And I don't think that they get into this issue of was the at-home defense available under Gilmore, under Goodyear, or was it available under Daimler? I think you make a strong argument. I think you make a strong argument there's a waiver. All right. Now, with regard to the due process issue, I want to explain what Judge Kessler did here. First, she vacated the default. And she vacated the default primarily on the strength of the case from this court. By due process, you're not speaking of jurisdiction. No, I'm speaking about the persuasive, the reasoning of cases like Price. I don't understand. If jurisdiction is waived, why are you talking about jurisdiction? Well, I'm not. It's more about let me go right to the default then, and I'll come back to where I'm going. The district judge said the default was intentional. It was a strategic decision, number one. Number two, it caused severe and painful prejudice to this family, because they had to fly into the district and testify about the worst day of their life and the pain that it caused, and they'll never get that back. But she said, you know, we have a rule in this district that foreign sovereigns, foreign countries, shouldn't be defaulted if it can be avoided at any cost. And she relied on a case called practical construction. I think the facts are very different in that case. But nonetheless, what she said was this entity, the PLO and the PA, they are not a sovereign nation, but the reasoning of practical construction applies here because of their attributes. Their attributes are sufficient for these purposes that I'm going to apply the reasoning of that case to this, because they're more like a foreign government than they are like a private actor. What's the scope of review of our ‑‑ what is the scope of review of binding us on this issue? Abuse of discretion, which is an error of law or a substantial mistake of fact. Here there's no question about what the facts are. The only question is, is the reasoning of practical construction ‑‑ Is it reasonable or not? Is it correct as a matter of law? But you can't pin it just to that. I mean, Rule 55 talks about you can vacate default for good cause, right? Right. Good cause. That's awfully broad. And why is it appropriate for the district court to consider the international implications of a default against the PA? Well, there are two reasons, I think. The first is ‑‑ Again, under an abuse of discretion standard, yeah. Sure. The first is I think that if she's incorrect as a matter of law, that they're the juridical equivalent. The premise here, the premise here that you just heard a long conversation about is that unless the PA is the juridical equivalent of the United States, unless they're a sovereign, they're entitled to treatment as if ‑‑ I think that's a ‑‑ I think you're trying to slice it too fine. Good cause. District court has discretion to set aside a default for good cause. The district court here thought a good cause was the international implications of putting the Palestinian authority in default. In other words, and that doesn't depend on sovereign. Right, yeah. That's fair. I do want to point out two things about that, and then I want to get to the other issues. The first is that where it suited the defendant's purpose, they wanted to be treated as if they were sovereign. And the district court said that's persuasive. Not that they are sovereign, but that the reasoning applies equally here. That's the first thing I want to say about that. The second thing I want to say about that is there are circuits, and I don't think this circuit has spoken with crystal clarity about it, but there are circuits which have said a willful default is ‑‑ if you willfully default, if it's intentional, then that disqualifies you for good cause. The district judge didn't follow those cases. She followed cases that said we're going to mix it all together. And she said primarily she wanted to do that because ‑‑ But the key is what you just said. It's not crystal clear in this circuit. So how could you say that was an abuse of discretion on her part when we have no case law that says willful default, end of inquiry? I think that the cases could be read that way, but I think that's a question for ‑‑ Abuse of discretion. Well, the rules don't say that. The rules say good cause, and it doesn't exclude a willful default. The rules ‑‑ the case law that says ‑‑ Rule 55. The case law that says what I'm saying is a loss on the term good cause. Right. The rule does not say it. The cases say it. Okay. Well, not cases here. True. This court has not come out either way on that question. So that would be something that you'd have to address. Right. Now, the next thing that happened to these plaintiffs is they wanted discovery of intelligence files from the district court. And the defendants came and they said, well, we're entitled to state secrets because we're an important governmental partner of the United States, and we want to be treated like a government for purposes of state secret privilege. And, again, the district court said, well, look, they're not a sovereign, but the reasoning behind that applies to them, and so I'm not going to give you that information. And, quite frankly, the information in those files can be extremely helpful. I know that because I tried the Socklow case. But it's not. We've looked at it. If we conclude, just as she concluded, there's nothing that would help you in this case. Well, what she said, and I haven't seen the files. No, of course not. And I think it's profoundly unfair to ask me a question like that when I haven't seen them. I'm an officer of the court. I could look at them under an attorney's eyes only provision, and to tie my hands and blindfold me and tell me what it says, it's just not fair. Well, the key is, in your brief, you said the real problem is you weren't allowed to argue. But the real key is whether the district judge should have seen it in camera. But isn't that appropriate that the district judge look at it in camera? I don't have a problem with making a privileged determination in camera. Okay. And once the district judge concluded, forget the brief that came in afterward. Once the district judge concluded it's irrelevant or inadmissible, then why isn't that the end of the case? Well, she didn't conclude that it was privileged. She concluded it was inadmissible. I said inadmissible. Irrelevant and inadmissible. I don't understand that wholly because a file prepared by the defendant in the ordinary course of its business operations or public operations is an admission. So I don't understand how that could be inadmissible. I don't understand. But this is intelligence material. Well, I haven't seen it. But the ones that I've seen that are like that, they say, you know, so-and-so did the following crimes, and those are admissions. And so if it says Abu Hilal murdered Gilmore, that's an admission. If it said if my aunt had wheels, she'd be a trolley car. I'm sorry? If my aunt had wheels, she'd be a trolley car. If it did say that, you'd be in a stronger position. All right. Well, look, I think that the takeaway then on that issue, and, you know, if you've looked at them, you've looked at them, and I haven't. But the point is, is it illegitimate for the district judge to look at it as a camera? Once she looks at it in camera and concludes there's nothing here that helps, and it does arguably jeopardize the intelligence operations of the PA, why isn't that the end of the case? The end of the inquiry. The end of the inquiry. Yeah. But I can say about a piece of evidence that the judge won't know on his or her own. That's my job, is to put the evidence in context and explain it, and normally I get that chance in the trial court. And so, you know, I think it's- But you don't object to the fact that this was seen by the judge in camera. I mean, it happens with privilege all the time. Right, exactly. But it doesn't happen with admissibility, and that's the problem that I'm having. You know, the judge can say this is privileged because it's a communication from attorney to a client or a client to an attorney or something like that. But to say this isn't an admission or this isn't- What she said is these are after the fact statements, and so therefore they don't show prior knowledge, but that's not the issue here. The issue isn't prior knowledge. The issue is, did a member of this 417 terror cell participate in this crime? And let me go to that issue. On the merits, remember, the judge said, I'm going to vacate the default because I want this case tried on the merits. Then the district court, when it came to summary judgment, took every piece of evidence implicating the 417 terror cell and said, I'm going to throw that piece of evidence out. I'm going to throw that piece of evidence out. And so in the end, there is no determination on the merits. And let me tell you- But I mean, the whole point of Rule 56 in summary judgment is to see whether there are any material issues of fact based on admissible evidence. Right. So you have to begin the inquiry by seeing what is the scope of the admissible evidence, and then after you determine that, is there a case here to go to the trial? Right. And what she did here was call a bunch of strikes, falls, in order to throw the case out. And let me take you through a couple of them. Because I think the most obvious one are the Government of Israel post-investigative reports. Government of Israel- And each of these is governed under- our review is governed under abuse of discretion. Correct. Abuse of discretion meaning error of law or substantial error of fact. So take the Government of Israel reports. I think these are our best piece of evidence. They're crystal clear saying 417 committed this crime, and indeed Abu Halala, who we targeted and killed, committed this crime, participated along with others. And that's a- there's no question- What kind of document is that? That's a government report. That's a report by the- And how did the district judge describe that report? She called it a webpage. Which is- I think what that does is tips her hand about maybe what she thinks about a sister sovereign. If it was a- And she was anti-Israeli. Is that your point? I'm not saying that. I'm saying that she approached a statement by the Government of Israel with inherent skepticism. And that's clear from her opinion in which she says- She probably thought of it as analogous to statements of the United States government. Well, here's what the law is on that. We may not like all the statements that our government puts out. But there are statements and statements. And some statements can be perceived as public relations more than official inquiries based on careful factual analysis. I think that if the United States government put out a report saying, we have targeted and killed the following terrorists and here's the things that he did, nobody would say that's a press release put out for public relations purposes. And what the district court said here- Because it's all within the public records exception of the rule against hearsay. Right. Just because it comes from the government? No. It has to follow a lawful inquiry. And the opponent then has to follow a lawful inquiry. And isn't that what the district court's problem was with these statements? That there was no evidence showing where they came from, what they were the basis of. It was just a statement, a conclusory statement. It's a little more nuanced than that. What she said was- Because there was evidence, which was a report from Eviatar, an expert, Alon Eviatar, who said, I'm familiar with the process for producing statements like this. It's reliable. This is reliable. And she said- Statements like this, but not this statement. Fair enough. But this- I mean, we do that all the time with- Somebody will say, again, if the United States government put out a statement saying, we targeted the following terrorists and here's why, and somebody came on a Rule 104 hearing and said statements like this are reliable, the burden would then shift to the opponent to say that circumstances show that it's unreliable. And that's in Rule 803.8. And, in fact, Rule 803.8 was amended in 2014 to make it crystal clear that the opponent has the burden of showing that the statement is unreliable. You know, I thought you could quite cleverly put the issue as either it's a question of fact or it's a question of law. Well, she- Isn't it really something in between? Well, mixed questions are also reviewed. And almost policy issues here, too. I think that on this issue- In other words, the abuse of discretion standard seems to be the most difficult problem we're having. Even if we concluded that if we were sitting as a district judge, we would have come out differently. That isn't enough for us to reverse a district judge. The application of an erroneous standard is enough to send it back to the district court. The erroneous standard being? 803.8 says it's up to the opponent to show that it's unreliable. That's a 2014 amendment to the rule to make that crystal clear. And here the district court said, I have nothing showing it's reliable. So she applied the wrong standard. How does that show that she applied the wrong standard? I mean, she didn't say that I put the burden on the plaintiffs here, the proponents of the evidence. She just said, I found that I don't have anything here to show that it's reliable. You're asking us to make a leap to say that she, the district court, applied the wrong legal standard. I think what she said, it's not a leap based on the language of the district court's opinion. The language of the district court's opinion, and I know you've looked at it and I urge you to look at it again, is I see nothing to show me that it's reliable. And I discount the Eviatar Declaration because it's not granular enough, which is the point that Judge Griffith made. And my response to that is, if you're a district court and you're going to weigh facts, and on one side you have nothing, and on the other side you say, well, that's not enough, then what you've done is you've put the burden on the proponent rather than the opponent. Well, the opponent, by definition, challenged the piece of evidence, or else, I mean, that's how the issue got joined. And the opponent has to come forward with evidence. I mean, I'm an old criminal defense attorney, and I almost never put on any evidence, especially my client, when I tried a case, but that didn't mean that I wasn't challenging the government's case. I mean, I don't understand your argument. Right, and your client had a presumption of innocence, and in a lot of rules, like, for example, I'm trying to remember which one, I think the prior inconsistent statement, a criminal case has heightened protections, and so the burden isn't on the defendants, on the government. But on this particular rule for a government report, once you have a government report... Don't you think her, as Judge Wilkins points out, her statement could be interpreted either way? No. No, looking, I mean, I was looking at it last night, and I was thinking about this issue, and I know that you all have read it. If it's ambiguous. I don't think it's ambiguous at all. If it were ambiguous, if we concluded it's ambiguous. I think if you concluded it was ambiguous, well, I don't see how you can, I really don't see how you can... If we conclude it's ambiguous, then what? Then I think she, you have to send it back so that she can apply the correct statement. No, and we would defer, we would then give her the benefit of the doubt, that's the appropriate interpretation. That's what we always do for district judges. On a question of law, I don't know... This is not quite just a question of law, is it? No, I think that what the, who the burden is on is a question of law, and particularly, I particularly want to point the court to, I particularly want to point the court to pages 877 to 878 of the Joint Appendix, because that's really where she says, Eviatar isn't enough, that she doesn't have anything on the other side. So, that's, now, I also, I also want to make one point about specific jurisdiction, if I may, which is the Gilmore case, and the Kleinman case... You're making an argument on specific jurisdiction. You want to raise that you think that there's no waiver of that, and so that's before us? Well, I'll belt and suspend her, Your Honor. If you'll hear me on it, I'll... Okay, in other words, you're making this point because you think the waiver may fail? I, you know, I've made arguments that I was sure were right. Make it in 30 seconds. Go ahead. All right. Two things, very quickly. Number one, Gilmore and Kleinman took place in 2000 to 2004. It's a different factual scenario, and I think that that's a very important thing. Point number two, it's not just me who thinks you look at the national interest. That's what the Third Circuit has said. That's what the Sixth Circuit has said. That's what the Supreme Court says in all of the 14 Kleinman cases. Okay, thank you. We have your argument. Okay, thank you. We'll give you a minute back for rebuttal. Thank you. Thank you. May it please the Court, I'd like to address four issues. I'll take them up, of course, in whatever order the Court wants, although I'd like the invitation to walk into the lion's den and deal with Judge Silverman's point about waiver. But I want to talk about waiver. I'd like to talk about vacating the default, the in-camera review of the general intelligence service files, and then the long list of evidentiary rulings, only one of which, really, Mr. Yalowitz singled out as his best case, even though I think it's probably his worst. But let me deal with waiver, which is what Appellant says is it's a slam dunk on waiver because we didn't raise it in our first motion to dismiss. And as a matter of law, that's incorrect. The reasons, really, we were talking about in Lib Not and Sofra for reasons about the Price case. What Price says is when, as was the case here, when you raise sovereign immunity, we raised it as our first motion, lost big time because we're not sovereign. But when you raise sovereign immunity, what Price says is you're challenging both subject matter jurisdiction and personal jurisdiction. So as a matter of law, a sovereign immunity claim is challenging both subject matter jurisdiction and personal jurisdiction. That's in the Price case. That whole thing can be found at 294F3 at page 89. And then Mr. Yalowitz's favorite case, practical concepts, which is the case about the vacating default, at 811F2 at 1544 to 1545. What the court said there was, yes, a sovereign immunity challenge is a challenge to both personal jurisdiction and subject matter jurisdiction. So it's an awfully harsh consequence to say that a substantial jurisdictional challenge, which we just spent the entire last argument talking about, was waived because of a nomenclature issue, because the motion said sovereign immunity and didn't articulate the words additional and personal jurisdiction. I thought your primary argument was the Supreme Court law wasn't clear at the time. That's an argument you made in your briefs. I don't recall. And I'm glad you raised that because I certainly anticipated the court would ask that question. Which question? My question or his question? I'm happy to answer both of them. Answer his first. No, wait a minute. Maybe they're both the same question. They are. This is a different argument than you made in the brief, right? It's an additional argument because it was raised for the first time in his reply, the Rule 12H argument. The district court had two grounds for its waiver decision. The fundamental one was the Goodyear v. Diamond point that your mother talked about. We raised that. We said, look, it would have been futile from day one because the at-home standard hadn't been articulated. That's the argument we made in our brief. In their reply, in opposition to an alternative ground for affirmance, which I get to address for the first time here in an oral argument, they say you don't even need to reach that one because they messed up under Rule 12H and didn't assert personal jurisdiction. You know, we thought this would be an intriguing issue. The court wanted to know. And so what I found was that, indeed, this Court's addressed this very odd point, that when you have an alternative ground for affirmance and it's opposed on a different basis for the first time on a reply brief because we don't get to respond on that basis, is it germane to raise it at oral argument? On the Crocker case out of this Court, 49F3rd, pages 740 to 741, says, yeah, because when you're raising an alternative ground for affirmance, it doesn't work the same way as briefing of other issues. But, yes, Judge Silverman, you're correct that our primary argument in our red brief was that the reason why it wasn't waived is that the basis on which we could contest it today didn't exist back then. And that's arguable, given the Goodyear case, right? I don't think so. I think Socolow nailed it just as the district court did here. And Socolow adopted that in saying everybody, in retrospect, sees Goodyear with great clarity. But, unfortunately, as the database of district court decisions shows, people didn't get it. The whole reason why Daimler came about was the Supreme Court thought. Nobody's getting what we meant to say. Well, when the Supreme Court opinion is confusing and it's not clear, then it's important for counsel to make the point, isn't it? It's one thing if the Supreme Court opinion had been contrary to Daimler, but it wasn't. Well, it depends, I suppose, on your appetite for being slapped down for futility. What had happened was they had litigated and lost this issue repeatedly. Is that a problem for you, being slapped down for futility? Well, not me personally, Your Honor, but I can only speak for those who were litigating at the time. The fact is that as a matter of law, this has been the subject of three successive Second Circuit decisions, Gucci, Brown v. Lockheed, Socolow, which is if – I'll turn it around the other way. If the Second Circuit couldn't see it coming that this is what Goodyear meant, then why should ordinary mortals see it coming as this is what – You're not even – you're not better than the Second Circuit? I'll leave that to you, Your Honor, to tell me about what I'm not – Why don't you go to the other issues in the case? Certainly, Your Honor. So let me deal with them in reverse order. If he says – well, actually, let me deal with in-camera review. This is an easy one. They asked for it. They asked for it. They got it. It's hard to stand here and say it's an abuse of discretion for the district court to have conducted an in-camera review when they said if you – Well, that's why they didn't deny – they never claimed the in-camera review was a problem. Their concern is what happens subsequently. They don't like the district court's application of the aerospatial factors and what they've done in what I have to admire gymnastics when I see it, to try to turn that into re-arguing the jurisdictional question and talk about juridical equality. It had nothing to do with what the district judge said. The district judge said, I'm applying the aerospatial analysis. It applies to foreign litigants. It doesn't matter whether you're sovereign or not. I'm applying a multifactor analysis. Comedy is only one of them, but really it's the international context. Again, as Your Honor said, each of – Your Honors, as a district judge, might have called it the other way. It doesn't matter for purposes of the abuse of discretion standard. It was in the realm of reason. It was the right decision to make. What about the fact that the district judge allowed the defendant to write a brief in support of the inadmissibility of the matter that was in the N-camera but didn't allow any response? Was that troubling? No, for the following reason, which is the district court, and this is I think the broad view on abuse of discretion, was endlessly patient with both sides. First, in reversing default, then with the plaintiff. She allowed the issue of the GIS files to be litigated three separate times. First, in the scenario that Your Honor is talking about. Then she entertained a motion to unseal the records, which she treated as a motion for reconsideration. Then she entertained a third motion for reconsideration. By that point, the public record was full. There was public briefing on this issue. The district court had already explained her findings after N-camera review. But she allowed the defendant to write a brief specifically dealing with the N-camera material but didn't allow the other side to run. What she did was cured that to the extent that was an error at all, and I would not say it is because the district court has discretion, by fully informing the plaintiffs of what the arguments were. There was a public declaration, actually two of them, that explained the nature of the files and why they were sensitive and why they were privileged. She explained in her decision. What about inadmissibility? You know, counsel says, look, what a judge might think is inadmissible on first reading, he or she might be convinced by counsel who focuses on the issue somewhat differently. Well, I think the district court here listened endlessly to arguments on this subject. It is the rare district court that will let the same argument be made three different times. She heard them out fully on this issue. She allowed them to submit a separate declaration. Wait a minute. But they didn't know what was in the N-camera material. Well, that would be undoing the whole purpose of N-camera review. She characterized what they were in terms of what they were, the type of file. There was a public declaration from an official of the General Intelligence Service explaining them, explaining that this was raw intelligence material. Again, if Your Honor were sitting in the district court, perhaps you would have held it differently. But the abuse of discretion standard, and this is a good segue for me to get to default, recognizes that we ask the district judges to roll up their sleeves, to do the hard work, to manage the litigation. And just because I might have done it differently or Your Honor might have done it differently, doesn't matter for abuse of discretion. Their biggest problem in this case is the abuse of discretion standard. Absolutely every issue about which they complain is an abuse of discretion standard review. So that, I guess, gets me to- I don't understand why the district court felt the need to have ex parte legal argument. Why? I think the district court believed that it was going to assist her review of understanding the nature of these documents. But did she recognize the complaints? At that point, why doesn't it just throw-why don't you let the other side get involved as well? If you're going to ask for argument about what these things mean, if the court itself can't determine what they mean and there's implication. In our system, both sides get involved, right? You don't just let one side tell you what it means. Oh, I think this court has repeatedly seen where both in-camera documents and in-camera argumentative submissions, whether they're affidavits or whether they're briefs, they're regularly received in the case of classified documents. And indeed, I was listening to a recording of an argument for this court where the court went through an executive session to hear arguments over the classified record. It's done regularly in recognition that there may need to be classified advocacy or ex parte advocacy. When we go into a session where both lawyers are allowed to argue, Judge Griffiths is very concerned at this procedural, and I was asking the question too, whereby only one side gets the chance to argue. Now, I think your best response to that is the real key is the in-camera review. And when the district judge concludes that the in-camera review indicates to her that there's nothing in this material that's helpful to the plaintiff, the oral argument doesn't add much to it. It's not necessary. I'll adopt that, but may I supplement it by saying that to the extent it was an error, she cured it. What she said is, okay, now I'm putting out an opinion, I'm explaining what I saw, I'm explaining the arguments I heard, and I am going to treat your motion to unseal as a request for me to reconsider. And now that you know what I looked at, and now that you know my thinking process, you may advocate in open session, and I'll hear you. That's a good point. Now, what about your left? You had another. I see there's two other points, which is, number one, vacating the default. This circuit is a longstanding policy of favoring adjudication on the merits. Again, the district court was the person on the scene. The district court said, look, there's a lot of things here I don't like, but it's up to me to craft a tailor-made solution to the problem. I have given a broad remit under Rule 55C for good cause. I can consider lots of factors. One of the things that all of this Court's cases stand for in the default opinion. You know, maybe you can use lots of factors, but in Kegel, we identify three factors, right? We've sort of decided what good cause means, and it's three factors. And her analysis was not limited to those three factors. What do you say to that? Well, because Rule 55C, good cause in this context, was picked up in the practical concepts case by this Court as saying that, notwithstanding Kegel, which predates practical concepts, that the international impact influences the public interest, which is part of the good cause equation. And clearly what the district court did was it didn't let my clients get off scot-free. Look, this is very serious, but the bottom line is we still favor merits adjudication rather than defaulting on the merits. And if there's a case that proves the wisdom of the policy, it's this one. When given a chance to litigate the case on the merits, the defendants won this case. This is a case where the plaintiffs don't like the fact that they lost on the merits, and they say, okay, rewind the tape. Let's pretend that you didn't win on the merits. Let me win by default. And that flies right in the teeth of this circuit's preference for merits adjudication. So let me get down to the balls and strikes. I'm not sure I would have said that the district court called a bunch of balls and strikes in order to throw the case out. I think that's quite unfair to the district court. I think what the district court did was engage in incredibly painstaking and granular application of the hearsay rules, despite the almost impunity of the plaintiffs. After getting a year-long extension to oppose summary judgment, they filed this dismissive nine-page opposition to summary judgment and a bunch of documents and basically said to the district court, you figure it out. The district court commented on that, said the district court didn't like that. The district court nonetheless very carefully weighed all of the arguments that the plaintiffs had made, and only one of them did they single out as their best case. It's a clear case. These were press releases. They were accurately described by the district court as press releases. Press releases about who was guilty or not guilty of certain terrorist events. These are Ministry of Foreign Affairs press releases. And I have the greatest respect for the Israeli Ministry of Foreign Affairs, just as I do for the U.S. State Department. But they don't conduct criminal investigations. You really do? You really do? Absolutely, Your Honor. I love the statement of interest in the Sokolov case, one of my favorite pieces of reading. But the fact is that neither the State Department nor the Ministry of Foreign Affairs is a police agency. They don't conduct investigations into what was the key issue here. Who was the shooter? You wouldn't expect the Ministry of Foreign Affairs to have done it. And that's why the district court flunked their argument on the public records exception, saying the burden is on you on the first two elements. Are there findings of fact? No. It's a press release. Doesn't contain findings of fact. Does it show your legal authority or duty to conduct the investigation? No. Not only did it not show it, you wouldn't see it. within the scope of the Foreign Affairs Ministry. That means that the district court acted well within its discretion in excluding those press releases. If that's their best argument, you can imagine what I would say about the rest. The district court committed no abuse of discretion. The judgment of the district court should be affirmed. Thank you very much. Thank you very much. Give me back a minute. Two points. First of all, when you're appealing, when you're the appellee and you're showing up saying, I have a problem with the district court's jurisdictional decision, you address that jurisdictional decision. You don't sandbag the court on the other side with arguments that you pop up that oral argument with. That's argument about they actually did. The judge was wrong because they actually did raise jurisdiction in an oblique way. Because it was raised implicitly with the substantive motion to dismiss. Their new argument is a technical matter. But he said he got that from your reply brief. Well, where he should have gotten that was from Judge Kessler's opinion, which said that they waived it by not raising it. What about what you opening up in your reply brief? All I did was say Judge Kessler was right in her opinion. So that was something they obviously should have anticipated. I didn't come up with that on my own. Second thing, this idea that a State Department report or a Ministry of Foreign Affairs report doesn't fit within 8038 is foreclosed by this court's decision in Korean Airlines, which was a U.N. report, and by the Second Circuit's decision in Citibank, which said State Department reports apply. My argument was she improperly shifted the burden, and Mr. Berger was silent about that. He didn't say anything about the burden. And I urge the court to go back and look at the way the district court reviewed, applied this law, which is a new law. And it's not shameful that she missed it in the context of this case, but it is a new amendment to the rule. And because I didn't have time to go through the confessions and the prior inconsistent statements doesn't mean that she was right. She was not correct on those things. And if you have some evidence that's case-in-chief evidence, even if there's other evidence that's impeachment evidence, all those things go to the jury. You don't say, well, you have no affirmative evidence. I think we have your argument. Any questions? Thank you. Thank you very much. The case is submitted.
judges: Griffith, Wilkins, Silberman